Jerry F. LAMBERT and Betty B. Lambert, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 74–15–H.

United States District Court, W. D. Virginia.

Jan. 28, 1976.

Robert M. Musselman, Charlottesville, Va., for plaintiffs.

Helen E. Marmoll, Tax Div., Dept. of Justice, Washington, D. C., for United States.

## MEMORANDUM OPINION and ORDER

TURK, Chief Judge.

In this tax refund suit filed pursuant to 28 U.S.C. § 1346 plaintiffs claim $8,305.17 in income taxes assessed against them for the calendar years 1967 and 1968. The case is now before the court for decision on the government's motion for summary judgment.

The following pertinent facts and testimony appear from the record. Elizabeth Huffer was the owner and operator of the Huffer Nursing Home until December, 1965 when Weldon and Laura Stuart contracted to operate the home for Mrs. Huffer. By the terms of this agreement, the Stuart's were to receive $125 per week plus 5% of the profits, and the agreement was to continue from year to year beginning January 1, 1966.

Thereafter Mrs. Huffer decided to sell the nursing home because of the state of her health and difficulties with the Staunton City Health Department in connection with the operation of the home. Negotiations were held with Pinecrest, Inc. of Richmond, Virginia in 1967, and an attempt was made to finalize a lease and purchase option agreement around Easter of 1967. However, because agreement could not be reached as to the method of financing no contract was entered into with Pinecrest.

In the meantime plaintiff Jerry Lambert had approached Mrs. Huffer about the possibility of purchasing the nursing home. Mr. Lambert was interested in purchasing the nursing home, and to this end negotiated with Mrs. Huffer's attorney, Anthony Baroody. Mr. Lambert was unable to reach an agreement with Mr. Baroody, however, through direct negotiations with Mrs. Huffer a lease and purchase option agreement was reached on March 18, 1967. On April 17, 1967 the agreement was finalized by the execution of a Memorandum of Lease, the lease itself and a Purchase Option Agreement.

The lease provided that Mr. and Mrs. Lambert would lease the nursing home for $1,500 per month for a period of 18 months beginning May 1, 1967. The Lamberts agreed, among other things, not to sublease; to continue using the premises as a nursing home; and to make most repairs, with the cost of such repairs to be deducted from the monthly rental payments. The purchase option agreement allowed plaintiffs to purchase the property by exercising the option in writing within a fourteen month period beginning May 1, 1967. The purchase price was $260,000 less any amounts paid for two ambulances. On June 24, 1968 the Lamberts exercised their option to purchase the property by giving notice to Mrs. Huffer. Title to the property was passed to Mr. Lambert on October 28, 1968, and on that same date a deed of trust for $215,300 was put on the property. By the terms of this deed of trust plaintiffs agreed to make monthly payments to Mrs. Huffer in the amount of $1,991.35.

In his deposition Mr. Lambert stated that although from the very beginning his intent was to purchase the nursing home, it was his idea to have a lease with the option to purchase in order that

he "would have an out" if he later discovered that there had been misrepresentations about the home or if some personal circumstances prevented him from purchasing it. Mr. Lambert further stated that he considered the $1500 per month to be a fair rental value for the home because such an amount was consistent with the then prevailing interest rate on the purchase price. However, none of the rental payments were applied toward the purchase price or toward the interest thereon.

Mr. Lambert stated in his deposition that he and his wife considered themselves to be the owners of the nursing home as of May 1, 1967. However, Mrs. Huffer testified that she did not know if Mr. Lambert would exercise his option to purchase when the agreement was made. Mr. Lambert also testified that he understood the option agreement to mean that he could not complete the purchase of the property until the end of the 18 month period described in the lease.

On their federal income tax returns for calendar years 1967 and 1968 plaintiffs claimed depreciation and interest deductions as if they owned the nursing home in 1967 and 1968.[1] Upon audit these deductions were disallowed because title to the property had not formally vested in plaintiffs until October 28, 1968. Plaintiffs were given expense deductions for the rental payments they made in 1967 and 1968, but since these amounts were considerably less than the depreciation and interest deductions they had initially claimed plaintiffs were required to pay a deficiency assessment for 1967 and 1968 totalling $8,305.17. Plaintiffs' claims for a refund of this amount were thereafter denied administratively and this suit followed.

The issue presented by the government's motion for summary judgment is whether the undisputed facts demonstrate as a matter of law that plaintiffs were not entitled to claim depreciation and interest expense deductions on the nursing home prior to the transfer of title on October 28, 1968. Plaintiffs contend that for tax purposes there remains an unresolved issue of fact as to whether the lease and purchase option agreement signed on April 17, 1967 should be treated as a sale of the property as of that date. Plaintiffs therefore argue that they should be permitted to present evidence to show that for tax purposes a sale of the property occurred on April 17, 1967.

In support of its motion for summary judgment the government advances two arguments: first the government submits that the documents signed by plaintiffs and Mrs. Huffer demonstrate that they are not entitled to the deductions they claim, and plaintiffs should not be allowed to introduce parole evidence to vary the terms of these documents; secondly the government argues that even if parole evidence were allowed, the present record is sufficient to show that plaintiffs could not overcome the legal effect of the documents.

By its first argument the government asks this court to adopt the ruling of the Court of Appeals for the Third Circuit in *Commissioner v. Danielson*, 378 F.2d 771, cert. denied, 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123 (1967). In that case the court refused to allow the taxpayers to show by parole evidence that in the sale of their business covenants not to compete had been added solely as a tax benefit for the buyer. The rule which the government would have this court apply to the present case was there stated as follows:

"a party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc." 378 F.2d at 775.

---

1. During the period of the lease Mrs. Huffer also treated the nursing home as her property for tax purposes.

Although the approach adopted by the court in *Danielson* has certain salutary effects such as discouraging litigation and preventing the unilateral reformation of contracts, this court is not prepared to apply such a rule to the present case. The Court of Appeals for the Fourth Circuit has never adopted such an approach to tax cases, but rather appears to apply the traditional test in which the "substance" as opposed to the "form" of a transaction is considered for purposes of determining tax consequences. *See e. g., Kitchin v. Commissioner,* 340 F.2d 895 (4th Cir. 1965); *Meiselman v. Commissioner,* 300 F.2d 666 (4th Cir. 1962). Furthermore, adoption of a *per se* rule against the admission of parole evidence is not necessary in the present case, for the court is of the opinion that even with consideration given to the circumstances surrounding the transaction in question, the government's motion for summary judgment is obviously well taken.

■ Plaintiffs would attempt to overcome the import of the unambiguous lease and purchase option agreement by emphasizing that both Mr. Lambert and Mrs. Huffer were initially interested in a sale of the nursing home. Plaintiffs also point out that they purchased a private residence in Staunton within three months after they began operating the nursing home; that they purchased the nursing home ambulances shortly after executing the agreement; and that they painted the interior and made certain repairs on the home. Plaintiffs argue that such circumstances, together with their present testimony that they considered the transaction to be a sale from the outset is sufficient to overcome the government's motion for summary judgment.

However, aside from Mr. Lambert's self-serving testimony as to his intentions, the evidence simply does not indicate that the transaction between Mr. Lambert and Mrs. Huffer was meant to be anything other than a lease with an option to purchase. This is strongly evidenced by the fact that Mr. Lambert and Mrs. Huffer considered the rentals as being based on the fair rental value of the property, and the fact that the rentals were not subsequently applied toward the purchase price or interest. Even Mr. Lambert's testimony concerning the agreement with Mrs. Huffer does not support his contention that the transaction was intended to be a sale from the outset. Thus as noted, the agreement was written as a lease with an option to purchase at the behest of Mr. Lambert so he "would have an out" if he was later dissatisfied. Mr. Lambert testified that he did not remember making any capital improvements to the nursing home, and as noted above, the cost of repairs was deducted from the rent. Mr. Lambert also testified in his deposition that based on his understanding he did not become obligated to pay real estate taxes on the property until November 1, 1968. In explaining why he claimed depreciation deductions during the period of the lease Mr. Lambert stated,

"we felt that it was our intention to purchase the property, that was our intention and therefore we set it up that way."

However, from the overall circumstances the conclusion is inescapable that at most Mr. Lambert intended to purchase the nursing home in the future provided that he was satisfied with it during the rental period.

In summary, the material evidence is undisputed and overwhelming that the lease and purchase option agreement executed on April 17, 1967 was in substance precisely what it purported to be in form. The court thus perceives no issue of triable fact upon which plaintiffs could establish that for tax purposes a sale of the nursing home occurred earlier than October 28, 1968. Accordingly, the defendant's motion for summary judgment is granted.